UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

ADAM PETERSON,

    Plaintiff,

vs.

No. 1:17-cv-165

MUREX PETROLEUM CORPORATION
and JOHN DOE, Company Man,

    Defendants.

### COMPLAINT FOR PERSONAL INJURY AND JURY DEMAND

COMES NOW Plaintiff Adam Peterson, by and through his attorneys, FADDUOL, CLUFF, HARDY & CONAWAY, P.C. (Joshua K. Conaway) and LARSON, LATHAM, HUETTL (Damian J. Huettl) and for his cause of action and complaint herein against Defendants Murex Petroleum Corporation and John Doe, Company Man, would state as follows:

**I.     Parties, Jurisdiction, and Venue.**

1. Adam Peterson is a resident of the State of Minnesota.

2. Defendant Murex Petroleum Corporation ("Murex") is a foreign corporation doing business in the State of North Dakota. Upon information and belief, Murex was organized in the State of Delaware and has a primary place of business in the State of Texas. Murex has designated Lawco of North Dakota, Inc., 2714 25th Street W, Williston, North Dakota 58801-3209, as its registered agent for the service of process.

3. John Doe, Company Man, was working as a Company Man for Murex at the time of the incident underlying this litigation. No further information about John Doe is known at this time.

4. All acts and omissions by Defendant Murex as set forth herein were done through its officers, employees, or agents, acting in the transaction of Defendant Murex's business within the course and scope of their employment and/or agency, for which Defendant Murex bears vicarious liability.

5. Subject matter jurisdiction in this matter is proper based on the diversity of the parties and because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.000), satisfying the requirements of 28 U.S.C. Section 1332(a)(2).

6. Venue in this matter is proper in the United States District Court for the District of North Dakota, Northwestern Division, pursuant to 28 U.S.C. Section 1391, as a substantial part of the events or omissions giving rise to the claim set forth herein occurred in this judicial district.

## II. General Allegations.

7. The allegations of the preceding and succeeding paragraphs are hereby incorporated by reference as if set forth fully herein.

8. On or about April 15, 2012, Adam Peterson was employed by WISCO, a division of OMNI Energy Services Corp. ("WISCO").

9. On or about April 15, 2012, during windy conditions, on Defendant Murex's site number Lynn 3-10H, located near Tioga in Williams County, Defendant Murex's Company Man, John Doe, told Adam Peterson and his co-workers to keep running work, despite the wind.

10. John Doe, Company Man, ordered Adam Peterson and his crew to run a set of left-hand set rods into the well.

11. The workover operator of the crew, Jonathan Smith, did not want Adam Peterson's crew to work that day because the wind was so bad, and blowing approximately 25 to 30 mph on the ground.

12. Mr. Smith spoke to the John Doe Company Man and told him the crew would not work.

13. John Doe Company man told Mr. Smith that the rods and equipment were too expensive to sit around for a day and that the crew needed to get to work.

14. The wind was blowing so hard that the rods hanging from the fingers of the workover rig were banging against each other.

15. Adam Peterson had climbed to the rod basket and he and his crew continued to run rods.

16. Due to the rods hitting each other, and the wind blowing so hard, Adam Peterson was unable to communicate with the rest of his crew on the derrick floor.

17. The transfer cable was above Adam Peterson's head, due to the placement of the blowout preventer, which made it impossible for Adam Peterson to use the transfer cable as they were pulling rods.

18. John Doe, Company Man, ordered Adam Peterson to use his hands to steady the rods.

19. The wind continued to get worse and was howling through the derrick, so Adam Peterson and his crew decided to run the last rod and then shut it down.

20. Adam Peterson hooked the elevators on top.

21. As one of the rods came out, the paraffin caught his glove and pulled him and his arm into the rods.

22. Adam Peterson screamed at the people on the floor to stop, but no one could hear him due to the wind and the noise.

23. Adam Peterson's right forearm was broken, and he suffered compound fractures to both the radius and ulna.

24. When Adam Peterson was able to climb down out of the derrick and reach the ground, he could see bones protruding from his skin.

25. John Doe, Company Man, informed Adam Peterson that he would not take him to the hospital, because he did not want blood getting on his newly-purchased truck.

26. Mr. Smith took Adam Peterson to the hospital.

27. Adam Peterson suffered severe injuries including, but not limited to, multiple surgeries and permanent injury to his right arm.

28. Defendants' acts and/or omissions caused Plaintiff's damages.

### III.   Count I: Claims Against Defendant Murex.

29. The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

**Negligence**

30. At all times relevant to these causes of actions, Defendant Murex was responsible for the activities at the subject well site, and owed an obligation and duty, to act as a reasonable and prudent operating company would have acted under the same, or similar, circumstances. This responsibility included Defendant Murex's duty to exercise ordinary care, caution, and diligence, in the operations, maintenance, management, and oversight of operations at the well site and to keep the well site in reasonably safe condition for Plaintiff and other similarly-situated persons under the same, or similar, circumstances.

31. Defendant Murex breached these duties of ordinary care, and Defendant Murex's negligence was a proximate cause of Plaintiff's injuries and damages. Specifically, Defendant Cornerstone's negligence includes, but is not limited to, the following:

   a. Negligently hiring John Doe, Company Man, employees and/or supervisor(s);

   b. Failing to conduct through, and proper, investigation into the record, background and/or qualifications of its John Doe, Company Man, employees, and/or supervisor(s);

   c. Retaining its John Doe, Company Man, employees, and/or supervisor(s) when it knew, or reasonably should have known, that he/they was/were incompetent and/or dangerous;

   d. Failing to adequately train, and instruct, its John Doe, Company Man, employees, and/or supervisors regarding their responsibilities as company man, employees, and/or supervisors;

   e. Failing to adequately supervise its John Doe, Company Man, employees, and/or supervisor(s) in the discharge of their duties;

   f. Failing to keep the workplace premises safe;

   g. Failing to warn of unsafe equipment and conditions;

   h. Failing to properly supervise the operations that were being undertaken at the well site;

   i. Failing to use the proper equipment to conduct operations at the well site;

   j. Failing to properly coordinate the work;

   k. Failing to adequately supervise employees and/or agents working at the well site;

   l. Providing unsafe, faulty, and/or inadequate equipment for its employees and/or subcontractors to use in the operations in question;

   m. Failing to properly, and timely, address the inherently dangerous conditions created by the unsafe, faulty, and inadequate conditions with which others, and the employees, were required to work;

   n. Other ways to be discovered through the discovery process.

32. Defendant Murex authorized, ratified, and/or participated in all negligent acts alleged herein by Defendant Murex employees, agents, and/or independent contractors.

33. At any time when it is alleged that Defendant Murex acted, or failed to act, it did so by and through its agents, officers, employees, servants, principals, and vice principals, acting within the course and scope of their agency, employment, and/or other relationship.

**Respondeat Superior**

34. Defendant Murex is vicariously liable for the damages proximately caused to Plaintiff by virtue of the negligent conduct of its employees/agents. At the time of the incident made the basis of this suit, Defendant Murex had employees who were acting within the course and scope of their employment with Defendant Murex, and were negligent.

35. The negligence of these employees was a proximate result of Plaintiff's injuries and damages.

36. Therefore, Defendant Murex is vicariously liable to Plaintiff for the negligent acts and/or omissions of its employees on the basis of respondeat superior.

37. Furthermore, Defendant Murex is vicariously liable for punitive damages based on the conduct of its employees, officers, principals, and/or vice-principals. Defendant Murex's employees, agents, officers, principals, and/or vice-principals were acting the scope and

course of their employment with Defendant Murex and had sufficient discretionary authority to speak, and act, for it with regard to the conduct at issue, independent of higher authority.

38. Defendant Murex authorized, participated in, and/or ratified the conduct of its employees, agents, officers, principals, and/or vice-principals. Therefore, Defendant Murex is vicariously liable for punitive damages based upon its authorization, participation, and/or ratification of the conduct of its employees, officers, principals, and/or vice-principals.

39. Furthermore, Defendant Murex's acts and/or omissions described herein were malicious, willful, reckless, and/or wanton, displaying a conscious, deliberate, and/or reckless disregard of, or utter indifference to, harmful consequences, including the health, and safety, of Plaintiff and other persons, and resulted in the injuries, and damages, suffered by Plaintiff.

**Nondelegable Duty/Joint and Several Liability**

40. The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

41. The work performed by Plaintiff presents a peculiar risk even when performed in an ordinary, or reasonable, manner, and is inherently dangerous as that term is defined by North Dakota law.

42. Alternatively, Defendant Murex knew, or should have known, that the work performed by Plaintiff presented a peculiar risk of physical harm and that no protective measures by Plaintiff, or other person, could have prevented injury from this risk. As a result, Defendant Murex had a nondelegable duty.

43. Defendant Murex did recognize, or should have recognized, that the work made the basis of this suit was likely to create a peculiar risk of physical harm to others including Adam Peterson, unless reasonable precautions were taken.

44. The risks associated with the work were unusual and were not a normal, routine matter of customary human activity.

45. A reasonable company would recognize that special risks arose from the performance of the work itself, its character, and/or manner of performance, against which there was a necessity of taking special precautions.

46. The work involved in this case was inherently dangerous, because the commission of the work, either the work activity itself or the object sought to be attained, was very likely to cause harm if reasonable precautions against the peculiar risk and/or special danger were not taken.

47. Furthermore, the dangers encountered in the work involved in this case flow from the activity itself when carried out in its ordinary, expected, way, such that reasonable precautions aimed at lessening the risk could be expected to have effect.

48. Pleading in the alternative, Defendant Murex had a nondelegable duty in this case as a result of the relationship, and obligations, that it took on by its contractual obligation in relation to the project, including its operation and control over the premises, made the basis of this suit.

49. As a result of the nondelegable nature of Defendant Murex's duties in this case, it is jointly and severally liable for the injuries and damages caused to Plaintiff.

50. Plaintiff reserves the right to seek amendment of his Complaint once Plaintiff's counsel has had the opportunity to review all pertinent contracts, and agreements, between the parties.

51. Plaintiff reserves the right under N.D.C.C. Section 32-03.2-11 to seek leave to amend his complaint and seek exemplary damages, including vicarious liability for exemplary damages, as provided by North Dakota law.

### IV. Count II: Claims Against Defendant John Doe, Company Man.

52. The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

**Negligence**

46. At all times relevant to these causes of action, Defendant John Doe, Company Man, owed an obligation to act as a reasonable, and prudent, representative/independent contractor/operating company, and/or "company man" would have acted under the same, or similar, circumstances. Defendant John Doe was responsible for the activities at the well site in question on or about the time of the incident made the basis of this suit. This responsibility included the duty of Defendant John Doe to exercise ordinary care, causation, and diligence in the operation, maintenance, and oversight of operations at the well site, and to keep the work site in reasonable safe condition for Plaintiff, and other similarly-situated persons under the same, or similar, circumstances.

47. At the time of the incident, and immediately before, Defendant John Doe was negligent:

   a. Failing to keep the workplace premises safe;

   b. Failing to warn of unsafe equipment and conditions;

   c. Failing to properly supervise the operations that were being undertaken at the wellsite;

   d. Failing to use proper equipment to conduct the operations at the well site;

   e. Failing to properly coordinate the work at the well site;

   f. Failing to adequately supervise employees and/or agents working at the well site;

   g. Failing to properly, and timely, address the inherently dangerous conditions created by the unsafe, faulty, and/or inadequate conditions under which employees, and others, were required to work;

   h. Other ways to be discovered.

48. Each of the foregoing acts and/or omissions, whether taken singularly, or in a combination, were a proximate cause of Plaintiff's injuries and damages.

49. Furthermore, Defendant John Doe's acts and/or omissions described herein were malicious, reckless, wanton, displaying a conscious, deliberate, and/or reckless disregard of, or utter indifference to, the harmful consequences, including the health, and safety, of Plaintiff and other persons, and resulting in the injuries and damages to Plaintiff.

**Nondelegable Duty/Joint and Several Liability**

50. The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

51. The activity at the well site at the behest of Defendant John Doe, specifically the work performed by Plaintiff Adam Peterson, presents a peculiar risk, even when performed in an ordinary, or reasonable, manner, and is inherently dangerous activity as that term is defined by North Dakota law.

52. Alternatively, Defendant John Doe knew, or should have known, the work performed by Plaintiff Adam Peterson, at his behest, presented a peculiar risk of physical harm and that no protective practices by Plaintiff Adam Peterson, or any other person, could have prevented injury from this risk. As a result, Defendant John Doe had a nondelegable duty.

53. Defendant John Doe recognized, or should have recognized, that the work made the basis of this suit was likely to create a peculiar risk of physical harm to others, including Plaintiff Adam Peterson, unless reasonable precautions were taken.

54. The risks associated with the work were unusual and were not a normal routine matter of customary human activity.

55. A reasonable company man would recognize that special risks arose from the performance of the work itself, its character, and/or manner of performance, against which there was a necessity of taking special precautions.

56. The work involved in this case was inherently dangerous because the commission of the work, either from the work activity itself and/or the object sought to be attained, was very likely to cause harm if reasonable precautions against the peculiar risk and/or special danger were not taken.

57. Furthermore, the dangers encountered in the work in this case flow from the activity itself when carried out in its ordinary, expected way, such that reasonable precautions aimed at lessening the risk could be expected to have an effect.

58. Alternatively, Defendant John Doe had a nondelegable duty in this case as a result of the relationship, and obligations, he took on by his contractual obligations in relation to this project, including his operation and control over the premises, made the basis of this suit.

59. As a result of the nondelegable nature of Defendant John Doe's duties in this case, he is jointly and severally liable for the injuries and damages caused to Plaintiff.

60. Plaintiff reserves the right to seek amendment of the Complaint once Plaintiff's counsel has had the opportunity to evaluate all pertinent contracts, and agreements, between the parties.

61. Plaintiff reserves the right to seek leave to amend his Complaint and seek exemplary damages, as provided by North Dakota Law.

## V.    Damages.

62. The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

63. Plaintiff sustained serious, and permanent, bodily injuries from which he continues to suffer.

64. As a result of the incident in question, Plaintiff Adam Peterson has incurred, and will continue to incur, reasonable expenses for medical care, treatment, and services in the past, present, and future.

65. As a result of the incident in question, Plaintiff Adam Peterson sustained physical pain and suffering, which will continue into the future and he has been precluded from his normal activities as an individual, and has suffered loss of enjoyment of life.

66. As a result of the incident in question, Plaintiff Adam Peterson suffered disability and physical impairment in the past and, in reasonable probability, will sustain disability and physical impairment in the future.

67. As a result of the incident in question, Plaintiff Adam Peterson suffered mental anguish in the past and, in reasonable probability, will sustain mental anguish in the future.

68. As a result of the incident in question, Plaintiff Adam Peterson suffered lost earnings, and earning capacity in the past and, in reasonable probability, will suffer lost earnings in the future and lost earning capacity in the future.

69. Plaintiff is entitled to recover from Defendants compensatory damages in such amounts allowed by law and as determined by the factfinders in this case, as well as any, and all, such other damages and/or other relief available under North Dakota law, as determined appropriate by the Court.

70. Plaintiff reserves the right to seek leave to amend his Complaint and seek exemplary damages, as provided by North Dakota Law.

## VI.    Jury Demand.

71. Plaintiff demands a jury trial for all issues so triable.

WHEREFORE, Plaintiff prays that Defendant Murex Petroleum Company and Defendant John Doe, Company Man, be cited to appear and answer herein, that judgment entered in favor of Plaintiff and against Defendants for all damages available under North Dakota law for the injuries and damages described herein, for costs and disbursement, for pre-judgment interest at the highest rate allowable by law and from the earliest date allowed by law and for post-judgment interest at the highest rate allowed by law from the earliest date allowed by law. Plaintiff also seeks such other, and further, relief deemed just and proper under the circumstances.

Dated this 9th day of August, 2017.

                                    Respectfully submitted,

                                    LARSON LATHAM HUETTL LLP

                                    */s/ Damian J. Huettl*
                                    By: Damian J. Huettl (05495)
                                    Scott R. Miller (08795)
                                    Post Office Box 2056
                                    Bismarck, North Dakota 58502
                                    Telephone: 701.223.5300
                                    Fax: 702.223.5366
                                    Email: dhuettl@bismarcklaw.com
                                                smiller@bismarcklaw.com

                                    FADDUOL, CLUFF, HARDY & CONAWAY, P.C.
                                    Joshua K. Conaway
                                    Carlos E. Sedillo
                                    3301 San Mateo Boulevard NE
                                    Albuquerque, New Mexico 87110
                                    Telephone: 505.243.6045
                                    Fax: 505.243.6642
                                    jconaway@fchlaw.com
                                    csedillo@fchclaw.com
                                    *Attorneys for Plaintiff*