## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Adam Peterson, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER RE MOTION** |
| | ) **FOR SUMMARY JUDGMENT** |
| | ) **AS TO MUREX'S CROSS-CLAIM** |
| Murex Petroleum Corporation, | ) **AGAINST PHOENIX** |
| Mickey Peck, company man, | ) |
| Stokes and Spiehler, | ) |
| Earl Britzenhoff, Company Man, and | ) |
| Phoenix Operating Company, | ) Case No.1:17-cv-165 |
| | ) |
|     Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| Murex Petroleum Corporation, | ) |
| | ) |
|     Defendant and | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WISCO, Inc., | ) |
| | ) |
|     Third-Party Defendant. | ) |

## I.   BACKGROUND

In this action, plaintiff Adam Peterson ("Peterson") is suing to recover damages for an injury he sustained on April 15, 2012, while working as a derrick hand for third-party defendant WISCO, Inc. ("WISCO"). At the time of the accident, WISCO was doing rehabilitative work on an oil well operated by defendant and third-plaintiff Murex Petroleum Corporation ("Murex"). Specifically the work on the day of the accident was rod removal. Plaintiff was injured when his arm became entangled in the rods while he was in a basket up in the derrick.

1

In addition to contracting with WISCO to perform the rehabilitative work, Murex engaged the services of two companies who each provided a person to represent Murex at the wellsite with respect to the work being performed by WISCO. In oilfield parlance, the onsite representative for Murex is referred to as the "company man." One of the firms that Murex engaged to provide it with a company man was defendant Phoenix Operating Company ("Phoenix"). The individual retained by Phoenix for this purpose was defendant Earl Britzenhoff ("Britzenhoff"). The other firm engaged by Murex was defendant Stokes and Spiehler ("Stokes"). The individual that Stokes retained to be Murex's company man was defendant Micky Peck ("Peck").

Plaintiff has alleged in the complaint that one or more of the defendants are at fault for his injuries (either directly as result of their own conduct or vicariously) on account of his not having a safe place to work and being directed to follow unsafe working practices. Among other things, plaintiff contends Murex's company man directed that work on the job should continue despite it being too windy for safe operation and instructed that he perform his work in an unsafe manner. Plaintiff has not sued his employer WISCO, presumably because of the immunity provided by North Dakota workers' compensation law.

Peck has acknowledged that he was on the site and acting as a "company man" for Murex at the time of the accident. Whether Britzenhoff was also present and what role, if any, he played are disputed.

Murex filed a cross-claim against Phoenix in which Murex claims it is entitled to a defense by Phoenix of the claims being made by Peterson and for contractual indemnity. In the motion now before the court, Murex seeks partial summary judgment on the issue of whether Phoenix is obligated at this time to provide Murex with a defense.

2

Murex contends that its right to a defense by Phoenix arises out of a master services agreement entered into between Murex and Phoenix on March 8, 2012 ("Murex-Phoenix MSA") and, more specifically, Section 7, which reads as follows:

> 7. INSURANCE AND INDEMNITY:
>
> 7.1    Contractor shall at all times while operations are conducted hereunder carry insurance of types and in minimum amounts as shown on the attached Exhibit "A," "Minimum Insurance Requirements" with insurers satisfactory to Murex, unless an officer of Murex Petroleum Corporation has consented to Contractor's being a self-insurer as to any one or more the risks as to which coverage is required in such Certificate of Insurance. Within ten (10) days after signing this agreement or before performing any work and/or Services hereunder, whichever is sooner, Contractor will furnish evidence to Murex of the required coverage on a Certificate of Insurance.
>
> 7.2    Contractor agrees to protect, defend, and indemnify and save Murex harmless from and against liability, loss, damage or expense by reason of any suits, claims, demands, judgments and causes of action caused by Contractor, its employees, agents or any subcontractor, arising out of or in consequence of the performance of this agreement or any Service Agreement entered into pursuant to the terms hereof, except that in no instance shall Contractor be held responsible for reservoir loss or damage, nor for any liability, claim, demand, or cause of action attributable solely to the negligence of Murex. This provision requires Contractor to protect, defend and indemnify and save Murex harmless for concurrent negligence, including that part, if any, of such concurrent negligence attributable to Murex.
>
> This indemnity agreement by Contractor shall be insured by Contractor with insurers and in amounts satisfactory to Murex, except as to those risks as to which an officer of Murex has consented to Contractor's being a self-insurer.

(Doc. No. 89-1, pp. 1-2). Phoenix does not in its response dispute that the Murex-Phoenix MSA governs. Rather, Phoenix contends it does not have a duty to defend under the particular circumstances of this case. Phoenix also goes on to argue that any claim for indemnity is premature given that causation and negligence have not been determined. Murex does not dispute that it is premature to consider whether Phoenix might be required to provide indemnity and sates its motion is limited to whether it is presently entitled to a defense.

Murex argues in its brief that, under the plain language of Section 7.2, Phoenix is obligated

to defend Murex for "(1) a suit, (2) caused by Phoenix or its employees, (3) arising out of the performance of the Phoenix Contract, (4) so long as the suit is not solely attributable to Murex's negligence." And, while Murex agrees it is premature to determine whether Phoenix has any obligation to indemnify because the third and fourth factors have not been determined, citing cases addressing the obligation of insurers Murex argues the duty to defend is separate from and broader than the obligation to provide indemnity. Murex contends that, in determining whether Phoenix has duty to defend Murex with respect to the claims brought by Peterson, the court should look to Peterson's complaint. Murex argues that, when the court does so, it will see that one or more of the claims asserted by Peterson encompass the four points that it agrees must be established before there can be a finding of indemnity.

Phoenix disagrees. It argues the rules that govern when an insurance carrier is obligated to provide a defense do not necessarily apply to non-insurance indemnity provisions, citing the North Dakota Supreme Court's decision in Specialized Contracting Inc. v. St. Paul Fire and Marine Ins. Co., 2012 ND 259, 825 N.W.2d 872 (2012) ("Specialized Contracting"). Rather, according to Phoenix, the court must look first to the relevant language of the indemnity agreement to determine what it states about the subject of providing a defense and also, with respect to the potential application of N.D.C.C. § 22-02-07 (which imposes a statutory duty to defend in certain instances), the matters embraced by the indemnity language. Phoenix's argues that the import of what the parties agreed to in Section 7.2 is that any obligation to defend and indemnify is limited to when Murex is held liable for losses or damages "caused by" Phoenix (or by any of those for whom Phoenix had agreed to accept responsibility), and then only if the loss or damages is not the result solely of Murex's negligence. And, since this is the clear import of the contractual language and

4

also the scope of the indemnity for purposes of N.D.C.C. § 22-02-07 according to Phoenix, there is no present duty to defend.

In this case, the court starts first with requirements of N.D.C.C. § 22-02-07. In relevant part, § 22-02-07 reads:

> § 22-02-07. Rules applied in interpretation of a contract of indemnity
>
> In the interpretation of a contract of indemnity, unless a contrary intention appears, the following rules are to be applied:
>
> * * * *
>
> 3. An indemnity against claims, demands, or liability, expressly or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith and in the exercise of reasonable discretion.
>
> 4. The person indemnifying is bound, on the request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defense if that person chooses to do so.
>
> * * * *

In <u>Specialized Contracting</u>, the North Dakota Supreme Court interpreted N.D.C.C. § 22-02-07(4) as imposing a statutory duty to defend with respect to matters embraced by a contractual indemnity absent a contrary intention appearing in the agreement. 2012 ND 259, ¶ 22. The court concluded this duty to defend is "separate" from the duty to indemnify and "arises when a claim is made and indicates the indemnitor has an active responsibility to the indemnitee from the beginning for the defense against claims." <u>Id.</u> In reaching the conclusion that the statutory obligation to defend is separate and not limited to only when indemnity is owed, the court relied in substantial part upon the construction afforded California's like statute by the California Supreme in <u>Crawford v. Weather Shield Mfg. Inc.</u>, 187 P.3d 424, 427–31 (Cal. 2008) ("<u>Crawford</u>").

The North Dakota Supreme Court went on to state in <u>Specialized Contracting</u>, however, that,

5

under the statute, the implied duty to defend could be negated by the contract language expressing a "contrary intention," and that this could be something less than an express statement that there is no duty to defend. 2012 ND 259, ¶ 22. And, applying the "contrary intention" language of the statute, the court concluded that the contractual indemnity language at issue sufficiently expressed an intent that was contrary to the imposition of the implied statutory duty to defend. Id. The relevant contract language read:

> [Indemnitor] agrees to indemnify, save, and hold harmless the [Indemnitee] from liability, including all costs, expenses, and reasonable attorneys' fees, which may arise out of or result from [Indemnitor's] negligent acts or omissions in rendering professional services under this agreement. [Indemnitor] shall not be responsible for an amount disproportionate to [Indemnitor's] culpability.

Id. at ¶ 7. The court stated this language provided only for an indemnity against liability and, for that reason, was inconsistent with an obligation to provide an immediate defense. More specifically, the court stated:

> The language of the parties' agreement expresses a clear intent to limit the indemnity to liability. The duty to defend and the duty to indemnify are separate and the duty to defend arises when a claim is made and indicates the indemnitor has an active responsibility to the indemnitee from the beginning for the defense against claims. See Crawford, 79 Cal.Rptr.3d 721, 187 P.3d at 431–32; cf. Tibert v. Nodak Mut. Ins. Co., 2012 ND 81, ¶¶ 33–34, 816 N.W.2d 31 (duty to defend in insurance cases). The indemnity provision in this case expresses an intent that KLJ will accept responsibility after negligence and liability have been determined and that KLJ will not accept responsibility at the beginning when only a claim or allegation exists. We conclude the statutory duty to defend does not apply to the parties' indemnity agreement because it expresses a contrary intent.

Id. at ¶ 22.

The language of the indemnity provision in this case is different from that in Specialized Contracting. Here, the relevant language is not limited to an indemnity against liability. Rather, it extends to "claims" and "demands" and provides protection to Murex not only from liability and damages but also "expense[s]." Further, it specifically uses the word "defend."

6

Granted, there is the modifying language limiting Phoenix's obligations to when the loss or damage is caused by Phoenix (or by those for whom Phoenix agreed to accept responsibility) and then only so long as the loss or damage did not result solely from Murex's negligence. The most reasonable interpretation of the language as a whole, however, is that the parties intended this to apply only to the obligation to indemnify and not the obligation to defend despite the awkward phraseology and the language not being a model of clarity.

But, even if there is some doubt, there is absent in the relevant language an expression of "contrary intent" sufficient to negate the implied statutory duty to defend under N.D.C.C. § 22-02-07(4) given the language that was used. Notably, this conclusion is similar to that reached by both state and federal courts in California under analogous circumstances following the California Supreme Court's decision in Crawford, which the North Dakota Supreme Court cited with approval in Specialized Contracting. See St. Paul Fire and Marine Ins. Co. v. Kinetic Systems, Inc., No. CV-10-00493, 2011 WL 13213826, at **2–8 (C.D. Cal. Nov. 30, 2011); UDC–Universal Development, L.P. v. CH2M Hill, 103 Cal. Rptr. 3d 684, 689–93 (Cal. Ct. App. 6th Dist. 2010).

As already discussed, the obligation to defend under § 22-02-07(4) is a duty separate from the obligation to indemnify. It is triggered by the bringing of the claim. And, it applies even if it is later determined no indemnity is owed. See Specialized Contracting, 2012 ND 259, ¶¶ 21–22.

### III. ORDER

Based on the foregoing, Murex's motion for partial summary judgment against Phoenix (Doc. No. 87) is **GRANTED**. Phoenix is obligated to provide an immediate defense to Murex with respect to Peterson's claims against it.

7

**IT IS SO ORDERED.**

Dated this 19th day of April, 2019.

>  */s/ Charles S. Miller, Jr.*
> Charles S. Miller, Jr., Magistrate Judge
> United States District Court